## SALLIE L. PARKS ET AL. V. MINNIE D. WORTHINGTON.

No. 1828. Decided April 22, 1908.

**1.—Attachment—Unrecorded Deed.**

One claiming title to land under attachment and sale may assert such title as against a grantee of the debtor whose deed was unrecorded when the lien attached, by proving the creditor's right, though the one holding under such unrecorded deed was not made a party to the attachment proceedings. (P. 509.)

**2.—Deed—Recital of Consideration.**

As against a voluntary deed from husband to wife, one claiming under a subsequent deed from the husband cannot show the payment of a valuable consideration by the mere recitals of his deed, and the recital in it of a consideration of $50 for property worth $2,500 might be taken as evidence of mala fides in such transaction. (P. 509.)

**3.—Voluntary Conveyance—Attaching Creditor—Evidence.**

One claiming land under attachment, foreclosure and sale at suit of a creditor of the owner, as against a voluntary conveyance by such owner to his wife, unrecorded at the time attachment was levied, has the burden of showing the existence of the debt in question, whether claiming as a creditor acquiring his lien without notice of the deed, or as one attacking a voluntary conveyance in fraud of his rights. The proceedings in the attach-

ment suit are not evidence of such indebtedness against one not a party to it. If held to make a prima facie case of indebtedness, such effect would not be given to a judgment in the attachment suit obtained by voluntary appearance and confession of defendant, and especially where there is evidence of concert of action between plaintiff and defendant to defeat the latter's prior deed. (Pp. 509, 510.)

**4.—Husband and Wife—Separation—Deed—Consideration.**

A wife entitled by her husband's misconduct to obtain a divorce with proper allowance may, instead of strictly prosecuting that right, accept a maintenance from him on separation and the settlement may be upheld against creditors as a deed on consideration. (P. 510.)

**5.—Trustee's Deed—Conveyance to His Wife.**

By a conveyance in pursuance of the power conferred by a deed of trust, made by the trustee to his wife and not shown to be on a consideration furnished out of her separate estate, the property becomes community, the purchase in effect by the trustee himself, and the conveyance voidable by the cestui que trust or his vendee on restoring the consideration. Though the consideration were from her separate estate, it would seem that the husband's interest in her property might still be such as to make his conveyance as trustee voidable. (Pp. 510, 511.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Dallas County.

Mrs. Worthington brought suit against Parks and wife and recovered. Defendants appealed and on affirmance obtained writ of error.

*M. M. Parks,* for plaintiffs in error. *Smith & Gossett* for same in Supreme Court, only.

The title acquired by Mrs. Parks under the foreclosure of the attachment lien is good, notwithstanding the finding of said court that she had notice at the time the attachment was levied, that the land had been deeded by Worthington to defendant in error, because the evidence, and all the evidence, shows that at the time Worthington deeded this land to his wife he deeded all of his other lands to his wife, and was at that time justly indebted in the amount sued for in the attachment proceedings. His deed to the wife under such circumstances was void as to his creditors. Speer on Married Women, sec. 93; Donnebaum v. Tinsley, 54 Texas, 362; Belt v. Raguet, 27 Texas, 471; Reynolds v. Lansford, 16 Texas, 287; Raymond v. Cook, 31 Texas, 374; DeGarca v. Galvan, 55 Texas, 53; Briscoe v. Bronaugh, 1 Texas, 326.

Neither fraud nor conspiracy can be predicated upon the title acquired under the foreclosure of the deed of trust, nor upon the title acquired under the foreclosure of the attachment lien, because the parties were in the exercise of their legal rights, did nothing which they were not legally entitled to do, and violated no legal right of defendant in error. Franklin Ins. Co. v. Humphrey, 32 Am. Rep., 86; Randall v. Hazelton, 12 Allen, 412; Hendrix v. Nunn, 46 Texas, 152; Baines v. Mensing Bros., 75 Texas, 202; Adler v. Fenton, 24 How., 407; McHenry v. Sneer, 56 Iowa, 649; Kimball v. Harman, 34 Md., 406; Delz v. Winfree, 80 Texas, 404.

*H. W. Peck*, for defendant in error.—When the price paid is enormously inadequate and disproportionate to the value of the land, slight irregularities will be sufficient to justify setting the sale aside by a direct proceeding for that purpose. House v. Robertson, 89 Texas, 687; Allen v. Stephanes, 18 Texas, 672; Taul v. Wright, 45 Texas, 395.

There is no evidence to sustain the allegation of defendants that Sallie L. Parks bought the property in controversy with her separate means and estate and in the absence of such proof the law will presume that the property in controversy belongs to the community estate. This is so whether the conveyance is to the husband or wife or both, and the onus of proving that it is separate property is on the party asserting it; the purchaser at the trustee's sale being the wife of the trustee, the law then presumes that the trustee has a community interest in the property purchased and thereby became a purchaser at his own sale, which makes the sale null and void. Art. 2968, Sayle's Texas Civil Statutes; Houston v. Robertson, 2 Texas, 6; Epperson v. Jones, 65 Texas, 425; Morris v. Hastings, 70 Texas, 29; 2 Jones on Mortgages (3d ed.), sec. 1880; Platt on Property Rights of Married Women, sec. 32.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

This action was brought by the defendant in error to set aside certain deeds under which Mrs. Sallie L. Parks asserts title to the land in controversy, which is claimed by Mrs. Worthington under conveyance from her husband, W. M. Worthington, of date 9th day of March, 1903. In the District Court and the Court of Civil Appeals the plaintiff, Mrs. Worthington, recovered, and this writ of error was granted on the application of Parks and wife. The history of the controversy is as follows:

W. M. Worthington, who is the brother of Mrs. Parks, married plaintiff in Dallas, in January, 1903, and the two at once left for California and lived together until March, when, for some unexplained reason, they agreed to separate. On the 9th day of March, 1903, W. M. Worthington executed to plaintiff a deed for the land, reciting that it was in consideration of one dollar and love and affection, "as well as for her better maintenance, protection, livelihood and support." This deed was filed for record in Dallas County April 11, 1903. On the same day Worthington wrote to his sister, Mrs. Parks, at Dallas, telling her of the agreement to separate and of the conveyance. On the 14th day of March, 1903, B. R. Parks telegraphed Worthington "sign no papers." On the same day he sued Worthington before a justice of the peace of Dallas County on an account for $108.00 for money advanced, and sued out and caused to be levied on the land a writ of attachment, on the ground that Worthington was a non-resident. Worthington returned to Dallas and, on March 31, 1903, executed to Mrs. Parks a deed for the land for a recited consideration of $50.00. On the 22d of April, 1903, Worthington filed in the suit in the Justice's Court an answer waiving service of citation, admitting the indebtedness alleged by Parks and agreeing that judgment might be

rendered therefor. On the same day judgment was rendered for the debt and foreclosing the lien of the attachment, showing by its recitals that it was based wholly on Worthington's admission and agreement, and the land was sold June 2, 1903, under order of sale and purchased by and conveyed to Mrs. Parks for the sum of $115.00. Notice of this sale was posted and a copy was mailed to Worthington. None was given to Mrs. Worthington and she knew nothing of the attachment proceeding or of the sale before the latter took place. When she learned of the proceedings recited she brought this action June 16, 1903, to recover the property, and, afterwards, another sale was made of it. Before his marriage, Worthington, on December 19, 1902, executed a deed of trust upon the property to secure a loan of $400.00 obtained from Mrs. Caruth in which Parks, his brother-in-law, was made trustee with power to sell in case of default. The principal of the note was payable in three years, but the interest was payable annually, and the deed of trust stipulated that in case of default in payment of any instalment of interest the entire amount should mature at the option of the holder of the note, and the trustee, when requested by such holder, should sell the property as provided by statute for such sales. This deed was at once recorded. The deed further provided that the trustee's deed to the purchaser at such sale should be *prima facie* evidence of the recitals therein as to the default, the request to the trustee to sell, the advertisement, the proceedings at the sale, and of everything necessary to the validity thereof. On the 2d of February, 1904, Parks, as trustee, executed a deed for the property to his wife, reciting default in the payment of interest and other facts necessary to authorize a sale by the trustee, and reciting a sale on the second day of February, 1904, at which the property was struck off to Sallie L. Parks for the sum of $432.00, she being the highest and best bidder. The recitals showed full compliance with the deed in trust. This deed was put on record March 15, 1904. Mrs. Worthington had no actual knowledge of the existence of the deed of trust nor of the sale thereunder, and no notice of it was given to her. While all of the proceedings recited, except the making of the deed in trust, were taking place, she was out of the State. The value of the property was $2,500.00. After the trustee's sale the plaintiff amended her pleadings, setting up the facts as to her title, alleging the different conveyances under which the defendants claimed the land and charging that, with notice of her title, the defendants had conspired with her husband to defeat it and her right to redeem by procuring the several conveyances without any notice to her, alleging the inadequacy of the prices paid for it, offering to pay the sums necessary to redeem it and praying that the deeds be set aside. In their answer the defendants set up the title of Mrs. Parks under the several conveyances stated, and asserted that she was an innocent purchaser without notice. In support of the title under the attachment proceeding they further alleged that the lien was acquired without notice of the deed to plaintiff, and also that this deed was supported by no consideration but love and affection. At the trial, the facts as we have stated

them were made to appear. The defendants did not testify and introduced no evidence beyond their several chains of title.

We are of opinion that the evidence sustains the conclusions of fact of the Court of Civil Appeals, but we do not agree with all of the views expressed in the opinion of the Court upon the law of the case. For instance, we do not think it is true that it was necessary that Mrs. Worthington should have been made a party to the attachment proceeding in order to entitle Parks to subject the property to an attachment lien and to assert against her the superiority of such lien to her unrecorded conveyance, or attack such conveyance on the ground that it was without consideration and void as against creditors. To put himself in a position to do this it was only necessary for him to show that he was such creditor as he claimed to be. As we have reached the conclusion, however, that the judgment is correct, we shall proceed to state our own views of the case, without further discussion of the rulings of the courts below.

Of course the deed to Mrs. Worthington, whether with or without a valuable consideration, passed Worthington's title to her, and the production of it entitled her to recover, unless the defendants established a superior right. It was unrecorded when the attachment was levied and when Worthington executed the deed to Mrs. Parks. It is found upon sufficient evidence that Parks and his wife had notice of the deed to plaintiff at both dates, but as a question is made to the admissibility of some of that evidence we do not find it necessary to base our judgment upon it. There is no evidence that any consideration was paid for the conveyance from Worthington to Mrs. Parks, the recital in the deed being incompetent to prove the fact against the plaintiff; and, besides, the consideration recited, being so small in comparison with the value of the property, might well be held to furnish sufficient evidence of *mala fides* in that transaction. (Nichols-Steuart v. Crosby, 87 Texas, 443.)

The claim of title under the attachment proceeding rests upon two propositions: (1) that by the levy Parks acquired a lien superior to plaintiff's unrecorded deed, if at that time he had no notice thereof, and that this right vested in the purchaser without respect to the existence of notice at the time of the sale; (2) that, without regard to the question of notice, Parks, as a creditor of Worthington, had the right to subject the property to the payment of his debt, because the conveyance to Mrs. Worthington was voluntary and therefore fraudulent as against creditors. To both of these propositions the fact that Parks was a creditor of Worthington is absolutely essential; to the first, that he was a creditor when the writ was levied, and to the second, that he was such before the execution of the deed to plaintiff. The defendants failed to prove that this fact ever existed. The suit against Worthington, the affidavit for and the issuance and levy of the attachment afford no evidence competent against plaintiff of the existence of the indebtedness set up against Worthington. (Sanford v. Wiggin,

14 N. H., 441; Damon v. Bryant, 19 Mass., 411; Clute v. Fitch, 25 Barb., 428; Maley v. Barrett, 2 Sneed, 501.)

These authorities and others hold that in the trial of such issues the proceedings under which an attachment is levied are not competent evidence of the existence of an indebtedness as against the grantee in a deed from the defendant in the proceedings, and that without further proof of the fact of indebtedness the party asserting it does not put himself in a position to attack such a conveyance as a creditor. Some of them further hold that a judgment, although subsequent to the date of the deed, is evidence of the debt and sufficient to prove its existence, *prima facie* at least, when it is regularly obtained in the ordinary course of law. But it is also held that, where the judgment is based upon the confession of the defendant after the execution by him of the deed attacked, it affords no evidence of the fact of indebtedness. (Bump on Fraudulent Conveyances, sec. 586, and cases cited.) Whether this last proposition be true in all cases or not, it is clearly just to require that, when there is such evidence of concert of action between the alleged creditor and the judgment defendant to defeat the prior deed of the latter as the evidence in this case exhibits, there should be some further proof of the fact that the debt had real existence than a judgment which registers only the admission of the defendant made after he had conveyed the property sought to be subjected. No such proof was furnished and for this reason the defendants' claim under a constable's deed must fail.

We have so far assumed that the deed from Worthington to plaintiff was without valuable consideration, and that if Parks had shown that he was a creditor of Worthington at the time of its execution he might avoid it on that ground. But such a consideration as the deed recites might in some cases be sufficient to sustain it against the attacks of creditors. The law is thus stated: "An agreement between a husband and wife to live separate is not a sufficient consideration to support a conveyance from him to her. If a *feme convert*, however, is entitled, on account of misconduct of her husband, to obtain a divorce, and to have a proper allowance from him, she may, instead of strictly prosecuting that right, accept a maintenance from him, and the settlement will be upheld against creditors." (Bump Fraud. Conv., sec. 278, and authorities cited.) The facts do not appear to have been developed with reference to this question, and we can not definitely determine it. The plaintiff's testimony, which is all there is, does not bring her case within the last proposition found in the quotation.

It remains only to determine the effect to be given to the sale under the trust deed. We may concede for the purposes of the case that the recitals in the deed of the trustee are sufficient to show that the sale was regularly made in accordance with the deed of trust, so that if the property had been bought by some one other than the trustee or his wife it would be a complete answer to all that is alleged against it. But, virtually, the purchase was by the trustee himself. No evidence was offered that the consideration was furnished out of Mrs. Parks' separate estate.

The conveyance was to her during marriage and the presumption is that it became common property. It is too well settled to require citation of authorities that property so obtained can not be held against the application of the beneficiary to set it aside, accompanied by the offer to restore the consideration paid. To say the least, it is voidable at plaintiff's option upon her doing equity. This is all the judgment allows. Nor do we intimate that the result of this case would be different if the purchase had been made with the wife's separate funds. The husband would, in such event, be interested in the purchase because the property would become subject to his management and its fruits and revenues would fall into the common estate of himself and wife, and it might well be held that, considering the relation between a wife and her husband acting as trustee for another, his interest in the purchase, his opportunities to abuse the confidence reposed in him and to favor his wife at the expense of those whose interests it would be his duty to consult and guard with the most perfect disinterestedness, the transaction would be voidable at the election of the *cestui que trust*. (Tenison v. Patton, 95 Texas, 284.) It is unnecessary to pursue the subject further.

The plaintiff, upon the undisputed facts in evidence, was entitled to judgment, and it therefore becomes unnecessary to consider in detail the objections made to the rulings of the trial court. A verdict for plaintiff might well have been directed.

*Affirmed.*